IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JEREMIE SMITH,<br><br>                      Petitioner,<br><br>                  v.<br><br>STEVEN RACETTE, Superintendent,<br>Great Meadow Correctional Facility,[1]<br><br>                      Respondent. | No. 9:13-cv-00454-JKS<br><br>ORDER PROVIDING FOR SUPPLEMENTAL<br>BRIEFING REGARDING EQUITABLE<br>TOLLING BASED ON MENTAL ILLNESS |

      Jeremie Smith, a New York state prisoner proceeding *pro se*, filed a Petition for Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Smith is currently in the custody of the New York State Department of Corrections and Community Supervision and is incarcerated at Great Meadow Correctional Facility.

      Smith filed his Petition for Writ of Habeas Corpus with this Court on April 14, 2013. On August 1, 2013, Respondent filed a motion requesting that it be permitted to limit its answer to the issue of the timeliness of Smith's Petition. This Court granted Respondent's request and required Respondent to also address in its answer whether there was a basis for equitable tolling or otherwise extending the statute of limitations. Smith subsequently filed six affidavits in support of his Petition. Respondent answered, arguing that Smith's Petition was untimely, equitable tolling did not apply, and Smith failed to make a gateway showing of actual innocence.

---

    [1]     Steven Racette, Superintendent, Great Meadow Correctional Facility, is substituted for Superintendent, Five Points Correctional Facility. FED. R. CIV. P. 25(c).

Smith then filed a Traverse as well as two Supplemental Traverses. Because this Court granted Respondent's request to limit its response to timeliness, only timeliness is addressed here.

I. DISCUSSION

Smith's Petition is untimely. The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), imposes a one-year statute of limitations which runs from the latest of four events: 1) the date on which the judgment became final by the conclusion of direct review or the expiration of time for seeking direct review; 2) the date on which an impediment to filing an application created by state action in violation of the Constitution or federal law is removed; 3) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right is newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or 4) the date on which the factual predicate of the claim or claims presented could have been discovered through due diligence. 28 U.S.C. § 2244(d)(1). Only the first and fourth scenarios apply here.

A.  28 U.S.C. § 2244(d)(1)(A)

Smith's judgment of conviction was entered on June 29, 2009, and he did not appeal. His judgment became final 30 days later, on July 29, 2009, when the time for filing a notice of appeal expired. *See* N.Y. CRIM. PROC. LAW ("CPL") § 460.10. Smith had one year from that date to file his Petition with this Court. *Bethea v. Girdich*, 293 F.3d 577, 578 (2d Cir. 2002) (per curiam). Smith filed his Petition with this Court on April 14, 2013, over 3 years and 8 months after that deadline.

B.  28 U.S.C. 2244(d)(1)(D)

Although Smith did not raise the issue in his Traverse or supplemental filings, Smith could conceptually argue that the statute of limitations should not run from the date of entry of his judgment of conviction because his attorney did not appeal on his behalf, which he now argues amounted to ineffective assistance of counsel. The statute of limitations would instead run from the date Smith knew, or should have known through due diligence, that his attorney did not file a notice of appeal. According to the record, Smith filed a grievance against his attorney some time in 2009 alleging, *inter alia*, that his counsel failed to file a notice of appeal on his behalf. On November 19, 2009, Smith's attorney sent a letter to the state grievances committee responding to Smith's allegations, in which he explained that he did not file a notice of appeal because he was not aware that Smith had wanted to appeal, noting that Smith had pled guilty. That letter was copied to Smith. In response to Smith's answer to his letter, Smith's attorney sent a second letter again stating that he did not recall Smith indicating that he wanted to appeal since Smith pled guilty, that according to his recollection Smith had waived his right to appeal, and that counsel would have filed a notice on Smith's behalf if he had been aware that Smith wanted to appeal. Smith was again copied on that letter.[2]

Smith was therefore aware that his attorney did not file a notice of appeal on his behalf on or before November 19, 2009, and pursuant to 28 U.S.C. § 2244(d)(1)(D), would have had until November 19, 2010, to file his Petition with this Court. Had Smith acted diligently after discovering his attorney did not file a notice of appeal, he would still have been able to file a

---

[2] Although the letters are unsigned, Smith has included them and commented on them in his filings, indicating their authenticity and that he received them.

timely motion in state court for leave to file a late notice of appeal. CPL § 460.30(1). For the purposes of discussing equitable tolling, *infra*, this Court assumes that the statute of limitations began running on November 19, 2009, and that Smith therefore had until November 19, 2010, to file his Petition with this Court.

C.      28 U.S.C. § 2254(d)(2): Statutory tolling

Even assuming that a motion to extend the time to file an appeal could statutorily toll the limitations period, *see Bethea*, 293 F.3d at 579, Smith did not move *pro se* to file a late notice of appeal until April 7, 2011. Smith also did not file his *pro se* motion to vacate the judgment until February 9, 2012. Because both motions were filed after the expiration of the November 19, 2010, deadline, neither statutorily tolls the one-year filing deadline. *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000) (statutory tolling "excludes time during which properly filed state relief applications are pending but does not reset the date from which the one-year statute of limitations begins to run"); *see De Los Santos v. Ercole*, No. 07-cv-7569, 2013 WL 1189474, at *2 (S.D.N.Y. Mar. 22, 2013) (motion to vacate the judgment neither restarts nor tolls statute of limitations where it was filed after the one-year statute of limitations expired); *Bowman v. Walsh*, No. 07-cv-3586, 2007 WL 2815711, at *1 (E.D.N.Y. Sept. 25, 2007) (statutory tolling applies only if a petitioner's post-conviction motion was pending within the one-year limitations period). Thus, Smith is not entitled to statutory tolling, and his Petition can only survive if equitable tolling applies.

D.      Equitable tolling

In *Holland v. Florida*, the Supreme Court held that 28 U.S.C. § 2254(d) is subject to equitable tolling "in appropriate cases." 560 U.S. 631, 645 (2010). A petitioner is entitled to

equitable tolling only if he shows: 1) "that he has been pursuing his rights diligently," and 2) "that some extraordinary circumstance stood in his way" and prevented timely filing. *Id*. at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)); *Diaz v. Kelly*, 515 F.3d 149, 153 (2d Cir. 2008). The determination is made on a case-by-case basis. *Holland*, 560 U.S. at 649-50. "The term 'extraordinary' refers not to the uniqueness of a party's circumstances, but rather to the severity of the obstacle impeding compliance with a limitations period." *Harper v. Ercole*, 648 F.3d 132, 137 (2d Cir. 2011) (citations omitted). A period of 886 days passed between November 19, 2010, the date on which Smith knew that counsel failed to file a notice of appeal on his behalf, and April 14, 2013, the date on which he filed his Petition with this Court. Smith's allegations must support the conclusion that he was entitled to equitable tolling for all but 365 days of that period, which would bring his Petition within the one-year filing deadline. *Id*. at 142 (timeliness of petition subject to equitable tolling depends on its being filed within one year of the total untolled time after the challenged conviction became final).

As an initial matter, Smith's assertions that he is proceeding *pro se*, is ignorant of the law and legal procedure, and was at times without access to writing materials or a law library, do not warrant equitable tolling either individually or when viewed cumulatively. *See Smith*, 208 F.3d at 18 (*pro se* status does not merit equitable tolling); *Green v. Sheehan*, No. 1:12-cv-0665, 2014 WL 338832, at *5-6 (W.D.N.Y. Jan. 30, 2014) (below-average intelligence and lack of knowledge about governing law or AEDPA are not "extraordinary circumstances"); *Madison v. Hulihan*, No. 09-cv-337, 2012 WL 1004780, at *4 (E.D.N.Y. Mar. 23, 2012) (ignorance of AEDPA's statute of limitations in light of petitioner's *pro se* status does not warrant equitable tolling); *Lizaide v. Kirkpatrick*, 09-cv-5038, 2009 WL 4110296, at *2 (E.D.N.Y. Nov. 24, 2009) ("Ignorance of the

law and lack of education are not sufficient grounds to warrant equitable tolling."); *Bowman*, 2007 WL 2815711, at *2 (illiteracy, *pro se* status, and ignorance of law and rules of court have been "consistently" rejected as "extraordinary circumstances" warranting tolling "since they apply to most inmates"); *Francis v. Miller*, 198 F. Supp. 2d 232, 235 (E.D.N.Y. 2002) (petitioner's assertions that he has limited education, is ignorant of the law and legal procedure, lacked funds to hire another attorney, had limited access to legal assistance that was available to prisoners, and was allowed limited use of the prison law library were not extraordinary circumstances that warrant equitable tolling).

Similarly, Smith's assertion that counsel failed to file a notice of appeal on his behalf is not an "extraordinary circumstance" warranting tolling. *See Sanford v. Lee*, No. 11 Civ. 5714, 2012 WL 3062692, at *1 (S.D.N.Y. July 25, 2012) (petitioner's argument that counsel was ineffective for failing to submit a timely post-conviction motion does not rise to the level of ineffective assistance of counsel warranting equitable tolling); *Bowman*, 2007 WL 2815711, at *2 (failure of counsel to file a notice of appeal was not an extraordinary circumstance; "Not every petitioner appeals his conviction, especially where, as here, the petitioner pled guilty. Nor is an appeal a necessary prerequisite to filing a timely habeas petition. Moreover, a diligent person in petitioner's circumstances would have discovered that no appeal had been filed."); *Baldayaque v. United States*, 338 F.3d 145, 150-153 (2d Cir. 2003) (attorney error alone does not constitute extraordinary circumstances for purposes of equitable tolling); *Francis*, 198 F. Supp. 2d at 235 ("The mere fact that counsel declined to continue to represent petitioner does not justify petitioner's inaction for almost three years."). Only where counsel's conduct is "outrageous or . . . incompetent" will it be considered extraordinary. *Baldayaque*, 338 F.3d at 152 (while "attorney

error normally will not constitute the extraordinary circumstances required to toll the AEDPA limitations period . . . at some point, an attorney's behavior may be so outrageous or so incompetent as to render it extraordinary"). Smith's counsel's conduct does not reach that high bar. *Cf. Nickels v. Conway*, 480 F. App'x 54, 56-57 (2d Cir. 2012) (finding an extraordinary circumstance based on counsel's failure to file a habeas petition despite repeated direction to do so, providing erroneous information about the importance of the statute of limitations, providing false assurances about petition's progress, and failing to communicate with the petitioner); *Dillon v. Conway*, 642 F.3d 358, 363-64 (2d. Cir. 2011) (finding an extraordinary circumstance based on attorney "affirmatively and knowingly *misleading* [petitioner] by promising him that he would file the petition before" the deadline); *Baldayaque*, 338 F.3d at 152 (attorney behavior was extraordinary due to his failure to file a habeas petition after being specifically instructed to do so, failing to complete any research on the case, failing to provide petitioner with a reasonable level of information, and failing to explain the matter to the extent necessary to make an informed decision).

The Second Circuit has, however, held that AEDPA's one-year limitations period can be tolled on the basis of a petitioner's mental condition, depending on "how severe an obstacle [the illness] is for the prisoner endeavoring to comply with AEDPA's limitations period." *Bolarinwa v. Williams*, 593 F.3d 226, 231-32 (2d Cir. 2010). As the Ninth Circuit has recognized, the *Bolarinwa* court "did not give content to its severity standard," leaving its development to the district court's "'highly case-specific inquiry'" on remand. *Bills v. Clark*, 628 F.3d 1092, 1098 (9th Cir. 2010) (quoting *Bolarinwa*, 593 F.3d at 232); *see also Victorial v. Burge*, 477 F. Supp. 2d 652, 654-55 (S.D.N.Y. 2007) (the Second Circuit "adheres to a case-specific approach" and has

not developed a "bright line rule in determining when equitable tolling should apply in cases of mental illness"). It is the petitioner's burden to establish the appropriateness of tolling by offering a "particularized description of how [his] condition adversely affected [his] capacity to function generally or in relationship to the pursuit of [his] rights." *Bolarinwa*, 593 F.3d at 232 (quoting *Boos v. Runyon*, 201 F.3d 178, 185 (2d Cir. 2000)). The Second Circuit has suggested that in order to warrant an equitable toll on the basis of mental illness, a petitioner must show that "he was so incapable of rational thought that he could not appreciate his situation, or [that he] lacked the wherewithal to ascertain that he must take legal steps." *Rios v. Mazzuca*, 78 F. App'x 742, 744 (2d. Cir. 2003); *Bowman*, 2007 WL 2815711, at *3. Smith must show that his "particular disability constituted an 'extraordinary circumstance' severely impairing [his] ability to comply with the filing deadline, despite [his] diligent efforts to do so." *Bolarinwa*, 593 F.3d at 232.

In support of his argument that he is entitled to equitable tolling, Smith argues that he has been diagnosed with a "serious mental illness,"[3] that he has been prescribed various mental health medications, and that he is "a mentally ill *pro se* litigant with a very limited knowledge of the law, [and he] didn't fully understand the time limit surrounding a habeas corpus petition." Smith further alleges that during 2010 and 2011 he was incarcerated at various psychiatric facilities and that he was also "subjected to long term mental health strip cell confinement." Smith states that at least one of the psychiatric facilities did not have a law library and that he was not allowed access

---

[3] The New York State Office of Mental Health ("OMH") provides services in correctional facilities to mentally ill inmates who require psychiatric treatment. *See Justice v. Fischer*, 903 N.Y.S.2d 791, 792 (N.Y. App. Div. 2010) (citing N.Y. CORRECT. LAW § 401). The treatment needs of a particular inmate are determined following an assessment performed by OMH personnel. *Id*. A "service level one" recipient suffers from a "major/serious mental illness" with active symptoms requiring treatment. *Id*.

to pen, paper, or legal materials during some of his strip cell confinement. Smith appears to argue that he was incarcerated at a mental health unit and/or strip cell confinement for 712 of the 886 days from the time the statute of limitations began running until the time he filed his Petition with this Court.[4] In support of his claim, Smith has submitted a host of documents, including copies of prescriptions, outpatient psychiatric progress notes, letters from legal advocates about his mental health, grievances about his treatment, and nursing and psychiatric center monitoring charts.

Although Smith's submissions suggest that he has indeed struggled with mental health issues, the submissions are largely unexplained. They offer little detail as to the severity of Smith's mental illness, the time line of his condition, and how, if at all, his condition affected his ability to function in general or in relation to the pursuit of his legal rights. *See Bolarinwa*, 593 F.3d at 232. Most of the submissions deal with Smith's psychological fear of choking and his progress on soft or liquid diets, a condition which in and of itself would not amount to an extraordinary circumstance.

In addition, Smith's assertion that he took mental health medication is insufficient on its own to warrant tolling. *See Smith v. Lee*, No. 11 Civ. 8376, 2013 WL 2467988, at *10 (S.D.N.Y. June 7, 2013); *Jean-Louis v. Greiner*, No. 02 Civ. 6326, 2003 WL 1807144, at *3 (S.D.N.Y. Apr. 4, 2003) ("The statement that petitioner takes psychotic medication does not satisfy his burden to

---

[4] January 6, 2010, to April 22, 2010 (106 days); July 14, 2010, to September 22, 2010 (70 days); September 22, 2010, to November 2, 2010 (41 days); November 7, 2010, to November 8, 2010 (1 day); December 10, 2010, to December 23, 2010 (13 days); December 27, 2010, to January 3, 2011 (7 days); January 7, 2011, to January 13, 2011 (6 days); January 13, 2011, to February 9, 2011 (27 days); April 13, 2011, to May 2, 2011 (19 days); July 14, 2011, to April 22, 2013 (648 days). The total is 938 days. However, only the days between November 19, 2010, the date he knew his attorney failed to file a notice of appeal on his behalf, and April 14, 2013, the date on which he filed his Petition with this Court, are relevant. That amounts to 712 days.

show that this medication left him incapacitated or otherwise unable to pursue his rights.");
*Madison*, 2012 WL 1004780, at *3 (petitioner failed to provide any evidence, other than his own assertions, that psychotropic medications incapacitated him and prevented him from timely filing his petition). Smith must detail how being on those medications prevented him from timely filing his Petition.

Confinement in a psychiatric facility within the New York state prison system, on its own, is also insufficient to justify tolling. *See Jean-Louis*, 2003 WL 1807144, at *3. Rather, Smith must show that his confinement prevented him from pursuing his legal rights. *Id.*; *see also Corrigan v. Barbery*, 371 F. Supp. 2d 325, 330 (W.D.N.Y. 2005) ("In general, the difficulties attendant on prison life, such as transfers between facilities, solitary confinement, lockdowns, restricted access to the law library, and an inability to secure court documents, do not by themselves qualify as extraordinary circumstances."); *Saldana v. Artuz*, No. 99 Civ. 5089, 2000 WL 1346855, at *2 (S.D.N.Y. Sept. 19, 2000) (spending six months in "lock down" is not an extraordinary circumstance warranting tolling).

Moreover, Smith's conduct indicates that he was, to some extent, capable of pursuing his legal rights despite his alleged mental illness and psychiatric confinement. Notably, Smith filed his *pro se* motion to vacate the judgment in state court on February 9, 2012, his *pro se* application seeking leave to appeal that denial on November 27, 2012, and his Petition for Writ of Habeas Corpus with this Court on April 14, 2013, *while* he was allegedly in psychiatric confinement. Smith also filed his *pro se* motion for leave to file a late notice of appeal on April 7, 2011, in between periods of his alleged psychiatric confinement. He also filed a 42 U.S.C. § 1983 civil action against 40 DOCCS staff members of the Five Points Correctional Facility Mental Health

Unit for alleged abuse he suffered while incarcerated there between July 14, 2011, and April 22, 2013. Smith has not addressed how he was able to file these various claims both during and between psychiatric confinement and yet was unable to comply with the AEDPA filing deadline. Smith's conduct cuts against any argument that "he was so incapable of rational thought that he could not appreciate his situation, or [that he] lacked the wherewithal to ascertain that he must take legal steps." *Rios*, 78 F. App'x at 744.

Smith, therefore, has not yet provided sufficient detail about his mental illness to justify equitable tolling. *See Boos*, 201 F. 3d at 185 ("The burden of demonstrating the appropriateness of equitable tolling . . . lies with the plaintiff."). However, he has alleged sufficient facts—including the provision of records substantiating mental health issues—to indicate that equitable tolling may plausibly be justified in this case. *Bolarinwa*, 593 F.3d at 232 (remanding to district court to allow the petitioner to present evidence in support of her claim for equitable tolling based on mental illness); *Artis v. Hulihan*, No. 09 Civ. 9893, 2010 WL 4668926, at *6 (S.D.N.Y. Nov. 12, 2010) (granting petitioner 30 days to file a supplemental affirmation where he alleged sufficient facts to indicate that equitable tolling may be justified, but failed to provide sufficient detail to meet his burden); *Bowman*, 2007 WL 2815711, at *3 (granting petitioner 30 days to file a supplemental affirmation where the court was unable to ascertain if the petitioner's alleged mental illness prevented him from timely filing his petition). This Court hereby grants Smith 30 days to file a supplemental brief addressing the applicability of equitable tolling to his case. To prevail on his equitable tolling claim, Smith must show that his mental illness amounted to an extraordinary circumstance which prevented him from timely filing his Petition, and that he acted with reasonable diligence throughout the time period he seeks to toll. He may not rely on

personal conclusions or assumptions, but must support his allegations with evidence. *Bowman*, 2007 WL 2815711, at *4. He must show that he was unable to pursue his legal rights during the entire period he seeks to toll. Respondent has 30 days after the filing of Smith's supplemental brief to respond.

## II. CONCLUSION

**IT IS THEREFORE ORDERED THAT** Smith has 30 days, or up to and including April 21, 2014, to file a supplemental brief detailing his equitable tolling claim. Smith must support his claim with evidence that his "particular disability constituted an 'extraordinary circumstance' severely impairing [his] ability to comply with the filing deadline, despite [his] diligent efforts to do so." *Bolarinwa*, 593 F.3d at 232. If Smith does not comply, or if he fails to come forward with sufficient evidence that equitable tolling is warranted, this Court will dismiss his Petition for Writ of Habeas Corpus as untimely.

**IT IS FURTHER ORDERED THAT** Respondent has 30 days from the filing of Smith's supplemental briefing to file its response.

Dated: March 20, 2014.

/s/ James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
Senior United States District Judge