IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JEREMIE SMITH,<br><br>                Petitioner,<br><br>        v.<br><br>ANTHONY J. ANNUCCI, Acting Commissioner, New York Department of Corrections and Community Supervision,[1]<br><br>                Respondent. | No. 9:13-cv-00454-JKS<br><br>MEMORANDUM DECISION |

      Jeremie Smith, a former New York state prisoner currently on supervised parole, filed a *pro se* Petition for Writ of Habeas Corpus with this Court on April 14, 2013. On August 1, 2013, Respondent filed a motion requesting that it be permitted to limit its answer to the issue of the timeliness of Smith's Petition. This Court granted Respondent's request and required Respondent to also address in its answer whether there was a basis for equitable tolling or otherwise extending the statute of limitations. Respondent answered, arguing that Smith's Petition was untimely and that equitable tolling did not apply. On March 20, 2014, this Court entered an order granting Smith 30 days to file a supplemental brief supporting with evidence his claim that equitable tolling was warranted based on his alleged mental illness. Smith was warned that if he failed to comply, or if he failed to come forward with sufficient evidence that equitable tolling is

---

      [1] Smith was released from prison on March 25, 2014, and is currently on supervised parole. *See* http://nysdoccslookup.doccs.ny.gov/ (DOCCS # 09B2058). Accordingly, Anthony J. Annucci, Acting Superintendent, New York Department of Corrections and Community Supervision, is substituted for Steven Racette, Superintendent, Great Meadow Correctional Facility. FED. R. CIV. P. 25(c).

-1-

warranted, this Court would dismiss his Petition as untimely. Smith filed a supplemental brief on April 4, 2014, and Respondent answered on April 24, 2014.

## I. DISCUSSION

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), imposes a one-year statute of limitations which runs from the latest of four events: 1) the date on which the judgment became final by the conclusion of direct review or the expiration of time for seeking direct review; 2) the date on which an impediment to filing an application created by state action in violation of the Constitution or federal law is removed; 3) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right is newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or 4) the date on which the factual predicate of the claim or claims presented could have been discovered through due diligence. 28 U.S.C. § 2244(d)(1).

Smith's judgment of conviction was entered on June 29, 2009, and he did not appeal. His judgment became final 30 days later, on July 29, 2009, when the time for filing a notice of appeal expired. *See* N.Y. CRIM. PROC. LAW ("CPL") § 460.10. Under 28 U.S.C. § 2244(d)(1), Smith generally would have had one year from that date to file his Petition with this Court. *Bethea v. Girdich*, 293 F.3d 577, 578 (2d Cir. 2002) (per curiam). In its March 20, 2014, order, however, this Court assumed for the purposes of determining whether to apply equitable tolling that the statute of limitations would instead run from the date Smith knew, or should have known through due diligence, that his attorney did not file a notice of appeal on his behalf. According to correspondence between Smith's trial counsel and the state grievances committee, Smith was aware on or before November 19, 2009, that his attorney did not file a notice of appeal on his

behalf. This Court concluded that the applicable statute of limitations therefore expired on November 19, 2010. *See* 28 U.S.C. § 2244(d)(1)(D).

In *Holland v. Florida*, the Supreme Court held that AEDPA's one-year statute of limitations is subject to equitable tolling "in appropriate cases." 560 U.S. 631, 645 (2010). A petitioner seeking equitable tolling bears the burden of establishing two elements: 1) "that he has been pursuing his rights diligently," and 2) "that some extraordinary circumstance stood in his way" and prevented timely filing. *Id*. at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)); *Diaz v. Kelly*, 515 F.3d 149, 153 (2d Cir. 2008). The determination is made on a case-by-case basis. *Holland*, 560 U.S. at 649-50. "The term 'extraordinary' refers not to the uniqueness of a party's circumstances, but rather to the severity of the obstacle impeding compliance with a limitations period." *Harper v. Ercole*, 648 F.3d 132, 137 (2d Cir. 2011) (citations omitted).

The Second Circuit has held that AEDPA's one-year limitations period can be tolled on the basis of a petitioner's mental condition, depending on "how severe an obstacle [the illness] is for the prisoner endeavoring to comply with AEDPA's limitations period." *Bolarinwa v. Williams*, 593 F.3d 226, 231-32 (2d Cir. 2010). As the Ninth Circuit has recognized, the *Bolarinwa* court "did not give content to its severity standard," leaving its development to the district court's "'highly case-specific inquiry'" on remand. *Bills v. Clark*, 628 F.3d 1092, 1098 (9th Cir. 2010) (quoting *Bolarinwa*, 593 F.3d at 232); *see also Victorial v. Burge*, 477 F. Supp. 2d 652, 654-55 (S.D.N.Y. 2007) (the Second Circuit "adheres to a case-specific approach" and has not developed a "bright line rule in determining when equitable tolling should apply in cases of mental illness"). The Second Circuit has suggested that in order to warrant equitable tolling on

-3-

the basis of mental illness, a petitioner must show that "he was so incapable of rational thought that he could not appreciate his situation, or [that he] lacked the wherewithal to ascertain that he must take legal steps." *Rios v. Mazzuca*, 78 F. App'x 742, 744 (2d. Cir. 2003).[2]

Smith bears the burden of establishing the appropriateness of tolling by offering a "particularized description of how [his] condition adversely affected [his] capacity to function generally or in relationship to the pursuit of [his] rights." *Bolarinwa*, 593 F.3d at 232 (quoting *Boos v. Runyon*, 201 F.3d 178, 185 (2d Cir. 2000)); *Holland*, 560 U.S. at 649 (petitioner bears the

---

[2] *Rios* is a "summary order" decided in 2003 which "was not selected for publication in the Federal Reporter." 78 F. App'x at 742. Federal Rule of Appellate Procedure 32.1 ("Citing Judicial Dispositions") states that a court may not prohibit or restrict the citation of federal judicial opinions, orders, judgments or other written dispositions issued after January 1, 2007, which have been designated as "unpublished," "not for publication," "non-precedential," etc. FED. R. APP. P. 32.1(a). This rule, however, is "extremely limited" and "says nothing about what effect a court must give to one of its unpublished opinions or to the unpublished opinions of another court." FED. R. APP. P. 32.1, Committee Notes on Rules (2006). Second Circuit Local Rule 32.1.1 states that "[r]ulings by summary order do not have precedential effect." 2D CIR. R. 32.1.1(a). Although the local rule generally prohibits a party from citing to summary orders issued prior to January 1, 2007, it does not restrict a court's use of unpublished opinions. *Id.* at 32.1.1(b)(2). In discussing a court's citation to unpublished opinions, the Second Circuit has noted, "We do not suggest that published district court opinions are more persuasive than unpublished district court opinions; nor do we discourage district courts from citing to an unpublished opinion that is, for any reason, more appropriate than a published one." *Lebron v. Sanders*, 557 F.3d 76, 78-79 & n.7 (2d Cir. 2009) (per curiam). A number of federal courts in this circuit have similarly cited to and relied on *Rios* in determining whether equitable tolling due to mental illness is appropriate. *See, e.g.*, *Green v. Sheehan*, No. 1:12-cv-0665, 2014 WL 338832, at *5 (W.D.N.Y. Jan. 30, 2014) (petitioner failed to produce, pursuant to *Rios*, sufficient evidence that "he was so incapable of rational thought that he could not appreciate his situation, or lacked the wherewithal to ascertain legal steps," and thus equitable tolling was not warranted); *Muhammad v. Rabinowitz*, No. 11 Civ. 2428, 2012 WL 1155098, at *3 n.3 (S.D.N.Y. Apr. 6, 2012) (plaintiff in prisoner's civil rights action failed to establish severe mental illness under *Rios*); *Florio v. Cuomo*, No. 10 Civ. 0998, 2010 WL 5222123, at *11 (S.D.N.Y. Nov. 16, 2010) (citing to *Rios* in concluding that petitioner failed to establish that his mental state justified equitable tolling), *report and recommendation adopted in full at* 2011 WL 223217, at *1 (S.D.N.Y. Jan. 24, 2011); *United States v. Williams*, No. 05 Civ. 8165, 2006 WL 2034642, at *3 (S.D.N.Y. July 19, 2006) (citing *Rios* and concluding that petitioner failed to establish equitable tolling based on mental illness).

burden of demonstrating that equitable tolling is warranted). Smith may not rely on the absence of evidence or personal conclusions to prove that equitable tolling should be applied. *See Burt v. Titlow*, 134 S. Ct. 10, 17 (2013) (habeas corpus petitioner cannot rely on the absence of evidence that counsel gave adequate advice to establish ineffective assistance of counsel); *Bowman v. Walsh*, No. 07-CV-3586, 2007 WL 2815711, at *4 (E.D.N.Y. Sept. 25, 2007) (petitioner cannot rely solely on personal conclusions or assessments to establish that equitable tolling is warranted); *see also Rios*, 78 F. App'x at 744-75 (rejecting petitioner's argument that lack of evidence of mental illness indicated he was receiving no treatment and that his mental condition worsened to such an extent that he could not timely file his habeas petition). Rather, Smith must support his allegations with sufficient evidence to justify equitable tolling. *Bowman*, 2007 WL 2815711, at *4.

A period of 1,243 days passed between November 19, 2009, the date on which Smith knew that counsel failed to file a notice of appeal on his behalf, and April 14, 2013, the date on which he filed his Petition with this Court.[3] Smith was required to provide evidence to support the conclusion that he was entitled to equitable tolling for 878 days of that period, which would bring his Petition within the one-year filing deadline. *Harper*, 648 F.3d at 142 (timeliness of petition subject to equitable tolling depends on its being filed within one year of the total untolled time after the challenged conviction became final). Smith has failed to carry his burden.

---

[3] This Court stated in its previous order that a period of 886 days passed between November 19, 2010, and April 14, 2013, the date on which Smith filed his Petition with this Court. That calculation was incorrect—878 days passed between those two dates. In addition, Smith was aware of his attorney's failure to notice an appeal on or before November 19, 2009, not November 19, 2010. He must thus show that he is entitled to equitable tolling for all but 365 of the 1,243 days that passed between November 19, 2009, and April 14, 2013.

In support of his argument that he is entitled to equitable tolling, Smith has provided documentation that, while incarcerated, he was diagnosed with major depression, anxiety disorder, polysubstance abuse, antisocial behavior, and psychogenic dysphagia (psychological fear of swallowing or choking). Although Smith's submissions suggest that he has indeed struggled with mental health issues, Smith has failed to offer a particularized description of how his mental health has adversely affected his ability to pursue his legal rights. *Bolarinwa*, 593 F.3d at 232. His allegations that he felt "overwhelmed with feelings of hopelessness" and suffered "severe mood swings" are insufficient to establish the requisite causal relationship between his condition and his alleged inability to comply with AEDPA's 1-year statute of limitations. Moreover, the documents do not portray Smith as being incapable of rational thought or lacking the wherewithal to ascertain what legal steps he needed to take. *Rios*, 78 F. App'x at 744. Rather, his progress notes often describe him as having coherent, linear, and logical thoughts and fair judgment. One progress report in particular noted that Smith "did not present as acutely mentally ill but rather as a profound character disordered individual with multiple complaints against [the New York Department of Correctional Services]."

Unlike the petitioner in *Rios*, there is no evidence that Smith was ever declared incompetent to stand trial. *See* 78 F. App'x at 744. Nor is there any evidence that he has been civilly committed because he was unable to care for himself or presented a danger to himself or others. Nevertheless, Smith's submissions indicate that he was confined in some type of inpatient psychiatric care from December 29, 2009, until January 6, 2010 (9 days), from April 22, 2010, until May 10, 2010 (19 days), from July 14, 2010, until September 17, 2010 (66 days), September 22, 2010, until November 2, 2010 (42 days), and December 10, 2010, until December 23, 2010

(14 days), for a total of 150 days. As discussed in this Court's earlier order, however, confinement in a psychiatric facility within the New York state prison system, on its own, is also insufficient to justify tolling. *See Jean-Louis v. Greiner*, No. 02 Civ. 6326, 2003 WL 1807144, at *3 (S.D.N.Y. 2003) ("Even if petitioner had been locked in the [psychiatric treatment facility] during the relevant time period, this would not serve to toll the limitations period unless it prevented petitioner from pursuing his legal rights. Court have generally held that solitary confinement and hospitalizations are not the types of extraordinary circumstances that warrant equitable tolling."); *see also Corrigan v. Barbery*, 371 F. Supp. 2d 325, 330 (W.D.N.Y. 2005) ("In general, the difficulties attendant on prison life, such as transfers between facilities, solitary confinement, lockdowns, restricted access to the law library, and an inability to secure court documents, do not by themselves qualify as extraordinary or rare circumstances."); *Saldana v. Artuz*, No. 99 Civ. 5089, 2000 WL 1346855, at *2 (S.D.N.Y. Sept. 19, 2000) (spending six months in "lock down" is not an extraordinary circumstance warranting tolling). Rather, Smith must show that his confinement prevented him from pursuing his legal rights. *Jean-Louis*, 2003 WL 1807144, at *3. According to the documents he provides, Smith was admitted to inpatient care at one point for refusing medication, telling a nurse he was depressed, and alluding to suicidal thoughts. At another time, he received inpatient care for going on a hunger strike and for having suicidal ideations. His progress notes suggest that the hunger strike and suicidal ideations were a manipulation by Smith to keep himself in medical care and out of the general jail population. Such confinement does not amount to an extraordinary circumstance warranting equitable tolling, and in any event, Smith has failed to even assert how those periods of inpatient care prevented him from timely filing his Petition.

Smith asserts that for an unidentified period of time during his psychiatric confinement he was not allowed to send out or receive mail and did not have access to pen, paper, envelopes or legal material. It is not clear whether this amounts to an extraordinary circumstance, and even if it did, Smith would still have to establish a causal relationship between his lack of access to materials and the lateness of his filing. *See Corrigan*, 371 F. Supp. 2d at 330 (restricted access to law library and court documents is not an "extraordinary circumstance[]"); *Valverde v. Stinson*, 224 F.3d 129, 133-34 (2d Cir. 2000) (although the *intentional* confiscation of a prisoner's habeas corpus petition and related legal materials by a corrections officer is "extraordinary" as a matter of law, the petition must show that the confiscation prevented him from filing on time); *Watson v. Smith*, 268 F. App'x 86, 86 (2d Cir. 2008) (assuming arguendo that lack of access to state law materials could constitute an extraordinary circumstance, equitable tolling was unwarranted because petitioner failed to demonstrate a causal relationship between the alleged circumstance and the lateness of his filing). Nevertheless, even if this Court gave Smith the benefit of every doubt and concluded that he was entitled to tolling for the entire 150 days of inpatient confinement due to his lack of access to writing materials and/or incompetence to pursue his legal rights, Smith would still have to establish that he was entitled to equitable tolling for an additional 728 days to bring him within the statute of limitations. He has failed to carry such burden.

Moreover, Smith's conduct indicates that he was generally capable of pursuing his legal rights despite his alleged mental illness. Smith filed his *pro se* motion for leave to file a late notice of appeal on April 7, 2011, his *pro se* motion to vacate the judgment in state court on February 9, 2012, his leave for appeal from that denial on November 27, 2012, and his Petition for Writ of Habeas Corpus with this Court on April 14, 2013. Smith also filed a 42 U.S.C. § 1983

civil action against 40 DOCCS staff members of the Five Points Correctional Facility while he was incarcerated, although he does not state when he filed it.  Smith has failed to address how he was able to file those various briefs while suffering from mental illness and yet was unable to comply with the AEDPA filing deadline.  Smith's conduct cuts against any argument that "he was so incapable of rational thought that he could not appreciate his situation, or [that he] lacked the wherewithal to ascertain that he must take legal steps."  *Rios*, 78 F. App'x at 744.

Lastly, Smith does not request an evidentiary hearing, and this Court will not *sua sponte* order one.  "A district court has broad discretion to hear further evidence in habeas cases." *Nieblas v. Smith*, 204 F.3d 29, 31 (2d Cir. 1999).  "[W]here specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry."  *Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997) (quoting *Harris v. Nelson*, 394 U.S. 286, 300 (1969)); *see also Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief.").  This Court has provided Smith with the opportunity to supplement the record in support of his claim and concludes that further expansion of the record through an evidentiary hearing would not establish that Smith is entitled to relief.

In sum, this Court hereby dismisses Smith's Petition as untimely.  The evidence provided by Smith demonstrates that during the majority of time he wishes to toll he was able to function in

the general prison population and to pursue his legal rights. Equitable tolling based on mental illness is not justified in this case.

## II. CONCLUSION

**IT IS THEREFORE ORDERED THAT** Smith's Petition for a Writ of Habeas Corpus is **DISMISSED** as untimely. 28 U.S.C. 2244(d)(1)(D); *Bolarinwa*, 593 F.3d at 232.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003))). Any further request for a Certificate of Appealability must be addressed to the Court of Appeals. *See* FED. R. APP. P. 22(b); 2D CIR. R. 22.1.

Dated: May 28, 2014.

/s/ James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
Senior United States District Judge